In re TACOMA AVIATION
CENTER, INC., Debtor.

RAINIER NATIONAL BANK, Plaintiff,

v.

TACOMA AVIATION CENTER,
INC., Defendant.

Bankruptcy No. 82–00040T.
Adv. No. A82–0374.

United States Bankruptcy Court,
W. D. Washington.

Aug. 25, 1982.

Lowell Dale Young, Seattle, Wash., for plaintiff.

Robert L. Beale, Tacoma, Wash., for debtor/defendant.

### DECISION ON PRELIMINARY HEARING FOR INJUNCTION AND RELIEF FROM STAY

ROBERT W. SKIDMORE, Bankruptcy Judge.

This matter came on regularly for preliminary hearing on plaintiff's Motion for Temporary Restraining Order and Complaint for Relief from Automatic Stay. Lowell Dale Young appeared for plaintiff Rainier National Bank and Robert L. Beale appeared for the defendant corporation.

This action pertains to the parties' rights to six propeller blades which were installed on a Cessna Model 421A airplane. The aircraft is registered to Albert M. Lavine and Miriam F. Lavine of Kirkland, Washington. It is encumbered by a security interest in favor of Rainier National Bank which was duly recorded with the Federal Aviation Administration under 49 U.S.C. § 1403 on September 9, 1981. The aircraft was subsequently brought to the defendant Tacoma Aviation Center, Inc. for repairs and installation of new propeller blades. Said blades were installed and work was completed by December 18, 1981. The aircraft has remained in defendant's posses-sion due to the Lavine's inability to pay for the work completed. This dispute has arisen because defendant has expressed a desire to remove the blades from the aircraft for the purpose of sale. Plaintiff brought a motion before the court for relief from automatic stay and for a temporary restraining order to enjoin the defendant from removing said blades. An evidentiary hearing was held on July 21, 1982 regarding both issues.

Both parties agree that plaintiff Rainier National Bank has a valid security interest in the aircraft which was perfected prior to the delivery of the plane to defendant for repairs. The only issue presented is one of priority—is the defendant's interest in the propeller blades subordinate to or superior to the secured parties' security interest in the whole aircraft.

The defendant's position is that title to the blades still lies with Tacoma Aviation, Inc. until delivery is made to the Lavines, pursuant to R.C.W. 62A.2–401(2). The defendant also maintains that R.C.W. 62A.9–314 does not apply until title actually passes to the owners of the plane.

R.C.W. 62A2–401 provides in relevant part:

> Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, the purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. . . .
>
> (2) Unless otherwise agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods. . . .

The general rule stated in R.C.W. 62A.2–401(2) applies to a "transaction in goods. R.C.W. 62A.2–102." "Goods" is defined in Article 2 as " . . . all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price to be paid, investment securities . . . and things in action. R.C.W. 62A.2–105(1)."

■ At the time that the propellers were identified to the contract they were "goods." However, when the propellers were installed on the aircraft their character was changed to "accessions," which are defined as "goods installed or affixed [to other goods]. R.C.W. 62A.9–314(1)." When they were attached to the aircraft the propellers fell within the scope of Article 9 of the Uniform Commercial Code which ". . . applies so far as *concerns* any personal property and fixtures within the jurisdiction of the state . . . to any transaction which is intended to create a security interest in personal property or fixtures. . . . R.C.W. 62A.9–102(1)(a)."

■ The defendant's interest in the propellers is specifically included within Article 9 in R.C.W. 62A.9–104(c) which states: "This Article does not apply . . . (c) to a lien given by statute or other rule of law for services or materials *except as provided in R.C.W. 62A.9–310 on priority of such liens*. . . . (emphasis added)." R.C.W. 62A.9–310 provides:

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest only if the lien is statutory and the statute expressly provides for such priority.

A recent Washington case interprets R.C.W. 62A.9–310 priorities with regard to Washington's mechanic's lien statute, R.C.W. 60.08.020. In *Ibrahim v. HAPO Fed. Credit Union*, 28 Wash.App. 597, 625 P.2d 176 (1981), the plaintiff credit union had perfected its security interest in the debtor's 1970 MGB pursuant to R.C.W. 46.-12.095. The debtor took the automobile to Ibrahim for repairs and subsequently failed to pay for the work. The mechanic then perfected his chattel lien under R.C.W. 60.-08.020 and was granted summary judgment in Yakima County Superior Court. The court on appeal reversed the trial court in holding that under R.C.W. 60.08.020 the mechanic's lien would be subordinate to a prior perfected security interest in the vehicle.

A similar result was reached in *Ford Motor Credit Co. v. Howell Brothers Truck and Auto Repair Inc.*, 57 Ala.App. 46, 325 So.2d 562 (1975) under an Alabama mechanic's lien statute identical to R.C.W. 60.08. The plaintiff had a perfected security interest in a 1972 Ford diesel truck. The truck was taken to defendant's repair shop for repairs. Defendant found the engine to be "burnt up" and installed a rebuilt engine. The truck owner paid a portion of the $4,300.00 bill and was allowed to take possession of the truck. The defendant did not retain any security interest in the engine. Subsequently the truck was damaged and returned to defendant. The truck owner failed to pay for the underlying balance on the engine and the defendant removed the engine from the truck. Plaintiff sued for detinue-for possession of the collateral and/or damages for diminution in value.

The trial court awarded judgment to the repair shop. The creditor prevailed on appeal, the court holding:

> Section 9–314 of the UCC specifically deals with accessions to good subject to a security interest. Section 9–314(1) provides a method whereby repairmen may protect their interest in goods such as the engine in question. This may be done by taking a security interest in the goods which attaches prior to the time the goods are installed in the whole. Had defendants taken a security interest prior to installation their claim to the engine would have been superior to that of plaintiff. In such a situation removal of the engine would have been proper under § 9–314(4). Having failed to follow such procedure defendants were not entitled to the protection afforded by § 9–314(1). . . .
> Plaintiff held a properly perfected security interest in the truck which attached to the rebuilt engine when it was installed. Defendants had no right, under either a mechanic's lien or § 9–314 of the UCC, to remove the engine from the vehicle. Their removal of the engine, not for re-

pairs but for collection of a debt, was therefore a wrongful conversion insofar as the plaintiff is concerned. However, plaintiff's action was not for conversion but for recovery of property in specie, its alternate value and damages for detention.... *Ford Motor Credit Co.*, supra, 325 So.2d at p. 565.

Tacoma Aviation Center, Inc.'s interest in the propeller blades is subordinate to the perfected security interest of Rainier National Bank. Therefore, the preliminary injunction will be granted.

The defendant has raised another issue which must be considered with respect to relief from the automatic stay. The defendant is aware that both Rainier National Bank and the Lavines have conflicting claims in the aircraft. In order to protect defendant from multiple liability, the automatic stay will be lifted to allow the debtor to file a mechanic's lien under R.C.W. 60.08 and to file a counterclaim and third party complaint against plaintiff and the Lavines, respectively for Interpleader under FRCP 20.